IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


AMANDA P.,[1]                                    No. 3:21-cv-01040-HZ

                        Plaintiff,

v.                                               OPINION & ORDER

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION

                        Defendant.



Kevin Kerr
Kerr Robichaux & Carroll
PO Box 14490
Portland, OR 97293

        Attorney for Plaintiff

Renata Gowie
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Jacob Phillips
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Amanda P. brings this action seeking judicial review of the Commissioner's

final decision to deny disability insurance benefits ("DIB") and supplemental security income

("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. §

1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB and SSI on September 4, 2018 alleging an onset date of July 8,

2018. Tr. 132.[2] Plaintiff's date last insured ("DLI") is December 31, 2022. Tr. 254. Her

application was denied initially and on reconsideration. Tr. 1.

      On August 3, 2020, Plaintiff appeared with counsel for a hearing before an

Administrative Law Judge ("ALJ"). Tr.32–61. On October 16, 2020, the ALJ found Plaintiff not

disabled. Tr. 10–31.  The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on functional neurological disorder, nerve damage,

chronic pain, lack of mobile ability, nausea, neuropath, and an "unusable right side." Tr. 257. At

the time of her alleged onset date, she was forty-three years old. Tr. 25, 226. She has at least a

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative
record, filed herein as Docket No. 10.

high school education and past relevant work experience as a carpenter's helper and ticket taker. Tr. 25.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 15. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "functional neurological disorder, generalized anxiety disorder, and depression." *Id*. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 16–18. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> the claimant should never climb ropes, ladders, or scaffolds; she can frequently finger and handle with the right upper extremity; she should avoid concentrated exposure to hazards; and she can do 3-4 step tasks with occasional public and coworker contact

Tr. 18.

Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 24. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "Production Assembly,

Assembly Electrical I, and Routing Clerk." Tr. 26. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 26.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues the ALJ erred in finding Dr. Donaghu's opinion not persuasive. Pl.'s Brief at 5, ECF 11.

Specific regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under these regulations, ALJs are no longer required to give deference to any medical opinion, including

treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022)

## I.    Laura Donaghu, MD

Plaintiff contends that the ALJ's discussion of Dr. Donaghu's opinion was inadequate. She argues that (1) Dr. Donaghu's opinion about her tremor is supported by the record, (2) that the ALJ did not properly discount Dr. Donaghu's opinion about her gait and station, and (3) that the ALJ failed to address Dr. Donaghu's opinion regarding her mental health. Pl.'s Brief at 6.

Dr. Donaghu submitted a hybrid checkbox questionnaire and identified the following limitations. Plaintiff can occasionally (1/3 of the workday) lift and/or carry less than 10 pounds

and can never lift this amount for 2/3 of a workday. Tr. 1338. Plaintiff can "stand and/or walk at

one time for ten minutes," and can "stand and/or walk in an eight-hour day (allowing for normal

breaks) less than two hours." *Id*. Plaintiff can also sit at one time for thirty minutes and must sit

for less than two hours in an eight-hour day (allowing for normal breaks). *Id*. Plaintiff should

"lay down and take [a] nap to relieve symptoms due to fatigue" when not working. *Id*. Plaintiff

also should never climb, balance, stoop/bend, kneel, crouch, crawl, or finger (fine manipulation).

*Id*. Plaintiff can occasionally (1/3 of the workday) reach overhead, reach shoulder height, handle

(gross manipulation) and feel (skin receptors). *Id*. These limitations are due to Plaintiff's

"clumsy hands and arms and tremor." *Id*.

     Dr. Donaghu also found Plaintiff experiences limitations in her ability to "understand,

remember and apply information," "to interact with others," and "to concentrate, persist, or

maintain pace." Tr. 1339. Dr. Donaghu expected Plaintiff to "take unscheduled breaks . . .

outside of a standard morning, lunch, and afternoon break due to exacerbations of her mental

health symptoms." Tr. 1340. Dr. Donaghu also expected Plaintiff to miss sixteen hours of work

or more in a given month if she were to be employed in a "simple, routine job" *Id*. The checkbox

form does not provide further explanation, but states that it is based on Dr. Donaghu's

knowledge of Plaintiff and her review of Plaintiff's medical record.

     The ALJ found Dr. Donaghu's opinion "not persuasive." Tr. 24. She noted that Dr.

Donaghu "examined the claimant and based her conclusions on her clinical observations and the

claimant's performance on physical examinations," but found that the record did not completely

support Dr. Donaghu's opinion. *Id*. In addition, the ALJ concluded that "Dr. Donaghu's opinion

is not consistent with other evidence in the record, specifically, her gait and station were

normal." *Id.*

    i.  Tremor

   In discounting Dr. Donaghu's opinion about Plaintiff's tremor, the ALJ found that the severity of the opined limitations are "not completely supported by the examination findings." Tr. 24. The ALJ found that Plaintiff's arm tremor was constant but cited to a follow-up appointment where Plaintiff's tremor was "not as severe as last visit." Tr. 24 (citing to Tr. 643). Plaintiff contends the ALJ's discussion was inadequate. Pl.'s Reply Brief at 3, ECF 13. She argues that the ALJ focused on a limited set of records and that Dr. Donaghu's opinion is not inconsistent with the record. *Id*.

   Looking only at Dr. Donaghu's notes, Plaintiff consistently presented with a tremor. On November 27, 2018, Dr. Donaghu noted that Plaintiff "continues to have shaking of the right arm which waxes and wane," that she reported having "good and bad days," and that when Plaintiff was having a "bad day," Plaintiff "ha[d] more tremor, more nausea and vomits." Tr. 896. In Dr. Donaghu's objective assessment, she noted that Plaintiff was "alert and oriented" and had a "bilateral hand tremor, very mild on the left, more prominent on the right." Tr. 897. On January 7, 2019, Plaintiff presented to Dr. Donaghu for hypertension. Tr. 992–93. During this appointment, she observed that Plaintiff's tremor goes "up and down depending on the day," and that she had a "bilateral hand tremor, more so on right" that got "worse with intention, better at rest." Tr. 993. On May 5, 2019, Dr. Donaghu did not note any tremor during Plaintiff's visit. Tr. 1168–69.

   The record shows Plaintiff's tremor is consistent throughout her interactions with Dr. Donaghu. Thus, her opinion on Plaintiff's limitations related to the tremor is supported by her clinical interactions with Plaintiff. The ALJ erred to the extent she discounted Dr. Donaghu's opinion on this basis. However, as explained below, any error was harmless. A review of the

entire record shows Dr. Donaghu's opinion of the severity of Plaintiff's tremors conflicts with the medical record. The ALJ may consider the entire record to determine the extent which a medical opinion is consistent with a Plaintiff's claim. *See* Woods, 32 F.4th at 793 (finding no error where the ALJ found an examining physician's opinion inconsistent with "the overall treating notes and mental status exams in the record").

On January 18, 2019, Plaintiff went to Providence Neurological Specialties to get a second opinion for her tremor. Tr. 21 (citing to 1072). There were no observed tremors while reading a magazine in a waiting room. Tr. 1072. During the exam she exhibited "low amplitude high frequency tremulous irregular rest tremor . . . . this is distractable and comes and goes during exam," and it was "absent during tasks like putting socks/shoes on." *Id*. The neurologist also found that Plaintiff had "normal bulk, and tone without atrophy or fasciculation." *Id.* Another neurologist diagnosed Plaintiff's action tremor as "doing better" and "mild." Tr. 1175, 1177. In a follow-up appointment on June 18, 2019, Plaintiff had an action tremor which "appear[ed] functional." Tr. 1142. In addition, Plaintiff was evaluated several times between January 20, 2020 and February 18, 2020 while attending intensive outpatient treatment at Providence Portland Medical Center. In these progress notes, Plaintiff was noted as having no tics or tremors. Tr. 1274, 1296, 1310, 1322. Accordingly, substantial evidence supports the ALJ's conclusion that the severity of the functional limitations identified by Dr. Donaghu are not consistent with the overall medical record related to Plaintiff's tremor. Tr. 24.

ii.     Gait and Station

In discounting Dr. Donaghu's opinion, the ALJ found that her opinion was not consistent with other evidence in the record. Tr. 24. The ALJ specifically noted Plaintiff's "gait and station were normal." *Id.* This comment appears to relate to Dr. Donaghu's note on the checkbox form

that Plaintiff experiences "whole body tremors." Tr. 1337. Plaintiff argues the ALJ erred by relying on a limited section of the record to conclude that Dr. Donaghu's opinion was inconsistent with the record. Pl.'s Brief at 6. She maintains the record shows she suffered persistent limitations to her gait and station during the relevant period. *Id*. Substantial evidence supports the ALJ's finding as several medical professionals noted that Plaintiff had a normal gait and station.

Plaintiff asserts that the ALJ relied on a limited portion of the record to find Dr. Donaghu's opinion about her gait and station inconsistent. To support her argument, Plaintiff highlights a physical therapy initial assessment on October 31, 2018, where Plaintiff presented with "imbalance and poor vestibular integration, poor sensory processing and ability to integrate visual input into movement." Tr. 913. Plaintiff also cites a physical therapy visit from November 27, 2018, where Plaintiff had "mild impairment" while using an assistive device and was walking at a "slower speed" with mild gait deviation. Tr. 888. She was also found to have a "mild impairment" in changing speeds, but "demonstrate[ed] mild gait deviation or not [sic] gait deviation but unable to achieve a significant change in velocity or uses assistive device" and a "normal" gait pivot turn and could walk around cones without changing gait speed. *Id*. Despite these examples, substantial evidence supports the ALJ's conclusion.

Dr. Donaghu's opinion is not consistent with the record. The overall record shows that Plaintiff had a normal gait. Tr. 739, 738, 733, 680, 669, 647, 1072, 1177, 1146. On August 20, 2018, Plaintiff had a "normal" gait, walked 20' with no assistive device at good speed and was not rated as a fall risk. Tr. 659. On January 13, 2019, Plaintiff was ambulatory with a steady gait and normal motor function while mildly intoxicated Tr. 1075, 1078. Most recently, Dr. Yang Renata noted in her initial psychiatric evaluation of Plaintiff that her "gait is normal" and that

there were "no tics or tremors." Tr. 1274. This evaluation is consistent with records from

Plaintiff's intensive ten-day outpatient treatment that show no noted issues with gait or physical

mobility. Specifically, when Plaintiff was evaluated for progress, she was noted as not having

any gait or physical mobility issues. Tr. 1274, 1296, 1310, 1322. These evaluations occurred on

January 20, 2020; February 4, 2020; February 11, 2020; and February 18, 2020. *Id.*

Substantial evidence supports the ALJ's conclusion that Dr. Donaghu's opined

limitations and opinion are inconsistent with the record. The ALJ did not err in discounting her

opinion.

iii.    Mental Health Limitations

Plaintiff alleges that the ALJ erred by not addressing Dr. Donaghu's opinion of Plaintiff's

mental functioning. Pl. Brief at 5. The Court disagrees. The ALJ did address Plaintiff's mental

functioning and incorporated Plaintiff's mental limitations into the RFC. Tr. 16. Specifically, at

Step Three, the ALJ assessed Plaintiff's mental limitations based on Plaintiff's self-reports and

the mental health assessments in the record. Tr. 16–18. While the ALJ did not cite to specific

mental health related records in his discussion of Dr. Donaghu's opinion, the Court can discern

the ALJ's reasoning based on her discussion of Plaintiff's mental health functioning and

treatment throughout the decision as a whole. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th

Cir. 2012) (internal quotation marks and citations omitted) ("Even when an agency explains its

decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be

discerned."). Substantial evidence supports the ALJ's finding that Dr. Donaghu's opinion "is not

consistent with other evidence in the record." Tr. 24. Because they are carefully addressed

elsewhere, the ALJ did not err by failing to discuss the opined limitations related to Plaintiff's

mental functioning in the section addressing Dr. Donaghu's opinion.

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED: _____August 24, 2022_____.


_____
MARCO A. HERNÁNDEZ
United States District Judge